IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

CHARLES E.,[1]

          Plaintiff,

v.

COMMISSIONER, SOCIAL
SECURITY ADMINISTRATION,

          Defendant.

No. 3:24-cv-00081-HZ

OPINION & ORDER

Jeffrey Hugh Baird
Dellert Baird Law Office
6525 California Avenue S.W. #101
Seattle, WA 98136

      Attorneys for Plaintiff

Kevin C. Danielson
Assistant United States Attorney
District of Oregon
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204

Michonne Omo
Office of the General Counsel, SSA
Office of Program Litigation, Office 7
Social Security Administration
6401 Security Boulevard
Baltimore, MD 21235

      Attorneys for Defendant

---

[1] In the interest of privacy, this Opinion uses only the first name and the initial of the last name of the non-governmental party or parties in this case.

1 – OPINION & ORDER

HERNÁNDEZ, Senior District Judge:

This matter is before the Court on Plaintiff Charles E.'s request for judicial review of the Commissioner's final decision to deny supplemental security income ("SSI") and Defendant's Motion to Remand, ECF 31. This Court has jurisdiction pursuant to 42 U.S.C. § 405(g) (incorporated by 42 U.S.C. § 1383(c)(3)). The Court grants Defendant's Motion to Remand and remands this matter to the Commissioner for further administrative proceedings.

## PROCEDURAL BACKGROUND

Plaintiff applied for SSI on July 26, 2017, alleging an onset date of October 12, 2011. Tr. 269-74.[2] His application was denied initially and on reconsideration.

On April 21, 2020, Plaintiff appeared with counsel for a hearing before an Administrative Law Judge ("ALJ"). Tr. 38-94. At the hearing Plaintiff amended his alleged onset date to June 30, 2017. Tr. 47. On June 12, 2020, the ALJ found Plaintiff not disabled. Tr. 11-37. The Appeals Council denied review. Tr. 1-7.

Plaintiff appealed the matter to the United States District Court. On January 7, 2022, the District Court remanded the matter to the ALJ for further proceedings to "hold a new hearing and take additional evidence as necessary, re-evaluate the medical evidence, reassess plaintiff's residual functional capacity, and make a new finding at step five." Tr. 1127.

On July 25, 2023, Plaintiff appeared with counsel for a hearing on remand. Tr. 997-1048. On October 3, 2023, the ALJ found Plaintiff not disabled. Tr. 962-85. On January 12, 2024, Plaintiff appealed the ALJ's decision to this Court.

---

[2] Citations to "Tr." refer to the page(s) indicated in the official transcript of the administrative record, filed herein as Docket No. 7.

On October 10, 2024, Defendant filed a Brief and Motion to Remand. Plaintiff did not file a Reply brief or response to Defendant's Motion to Remand and the Court took this matter under advisement on October 24, 2024.

## FACTUAL BACKGROUND

Plaintiff alleges disability based on "ankylosing spondylitis, retrolisthesis, slipped capital femoral epiphysis, [and] chronic fatigue." Tr. 103. At the time of his amended alleged onset date, Plaintiff was 29 years old. Tr. 269. Plaintiff has a high school education and past relevant work experience as a fast food worker. Tr. 983-84.

## SEQUENTIAL DISABILITY EVALUATION

A claimant is disabled if they are unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). Disability claims are evaluated according to a five-step procedure. *See Valentine v. Comm'r*, 574 F.3d 685, 689 (9th Cir. 2009) (in social security cases, agency uses five-step procedure to determine disability). The claimant bears the ultimate burden of proving disability. *Id.*

In the first step, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520(b). In step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140–41; 20 C.F.R. § 404.1520(c). If not, the claimant is not disabled. *Id.*

In step three, the Commissioner determines whether the claimant's impairments, singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner]

acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 141; 20 C.F.R. § 404.1520(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

In step four, the Commissioner determines whether the claimant, despite any impairment(s), has the residual functional capacity (RFC) to perform their "past relevant work." 20 C.F.R. § 404.1520(e). If the claimant can perform past relevant work, the claimant is not disabled. If the claimant cannot perform past relevant work, the burden shifts to the Commissioner. In step five, the Commissioner must establish that the claimant can perform other work. *Yuckert*, 482 U.S. at 141–42; 20 C.F.R. § 404.1520(e)–(f). If the Commissioner meets their burden and proves that the claimant can perform other work that exists in the national economy, then the claimant is not disabled. 20 C.F.R. § 404.1566.

**THE ALJ'S DECISION**

At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since his October 12, 2011, initial alleged onset date. Tr. 968. At steps two and three, the ALJ determined that Plaintiff has the severe impairments of "ankylosing spondylitis, residual hip pain status-post surgery, Raynaud's disease, anxiety, depression, and borderline personality traits." Tr. 968. However, the ALJ determined that Plaintiff's impairments did not meet or medically equal the severity of a listed impairment. *Id.* The ALJ concluded that Plaintiff has the residual functional capacity to perform a light work with the following limitations:

> [Plaintiff] must be allowed to change positions between sitting and standing every 30-45 minutes, for 5-10 minutes, without being off task. He is not able to climb ladders, ropes, or scaffolds and is able occasionally to climb ramps and stairs. He is able to work at unprotected heights occasionally but never in extreme cold. [Plaintiff] is able to understand, remember, and carry out simple but detailed tasks and to interact with supervisors, co-workers, and the general public frequently.

4 – OPINION & ORDER

Tr. 971. At step four, the ALJ concluded that Plaintiff is unable to perform his past relevant work. Tr. 983. At step five, the ALJ found that Plaintiff could perform other work in the national economy. Tr. 984. The ALJ, therefore, concluded that Plaintiff is not disabled. Tr. 985.

## STANDARD OF REVIEW

A court may set aside the Commissioner's denial of benefits only when the Commissioner's findings "are based on legal error or are not supported by substantial evidence in the record as a whole." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009)(internal quotation marks omitted). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted). The court considers the record as a whole, including both the evidence that supports and detracts from the Commissioner's decision. *Id.*; *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). "Where the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be affirmed." *Vasquez*, 572 F.3d at 591 (internal quotation marks and brackets omitted); *see also Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007)("Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's")(internal quotation marks omitted).

## DEFENDANT'S MOTION TO REMAND

Plaintiff contends the ALJ erred when he (1) partially rejected Plaintiff's statements and testimony and (2) inadequately considered the opinions of medical expert Jill Silverman, M.D., nurse practitioner Nancy Armstrong, and physical therapist Leslie Blake.

In the Motion to Remand Defendant concedes that remand is appropriate to reconsider Plaintiff's RFC, but that remand for further proceedings rather than remand for the immediate

payment of benefits is appropriate. Plaintiff did not file a response to Defendant's Motion or a reply brief.

I.     **Standard**

The decision whether to remand for further proceedings or for immediate payment of benefits generally turns on the likely utility of further proceedings. *Harman v. Apfel*, 211 F.3d 1172, 1179 (9th Cir. 2000). When "the record has been fully developed and further administrative proceedings would serve no useful purpose, the district court should remand for an immediate award of benefits." *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004).

Generally, the decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the Court. *Strauss v. Comm'r*, 635 F.3d 1135, 1137 (9th Cir. 2011). The Ninth Circuit, however, has established a limited exception to this general rule. *Id*. at 1138. Under the limited exception, the Court must grant an immediate award of benefits when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Id*. The second and third prongs of the test often merge into a single question: Whether the ALJ would have to award benefits if the case were remanded for further proceedings. *Harman v. Apfel*, 211 F.3d 1172, 1178 n.2 (9th Cir. 2000).

Even when these "requirements are met," the Court should remand for further proceedings rather than for an award of benefits "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security

6 – OPINION & ORDER

Act." *Burrell v. Colvin*, 775 F.3d 1133, 1141 (9th Cir. 2014)(internal quotation marks and citation omitted).

**II.     Analysis**

Defendant asserts this matter should be remanded for further proceedings because serious doubt precludes crediting Plaintiff's testimony as true. *See Dominguez v. Colvin,* 808 F.3d 403, 409 (9th Cir. 2016)(declining to remand for payment of benefits due to conflicts in the record and doubts about the plaintiff's symptom allegations).

On June 28, 2017, Plaintiff completed an Adult Function Report in which he stated that "intermittently [his] hips will 'go out' making it impossible to walk unassisted sometimes for a whole week at a time." Tr. 299. Plaintiff stated he also has chronic back pain and these conditions combined "limit[] [his] ability to squat, stand for too long, or walk too far." *Id*. Plaintiff described his daily activities as "water . . . the garden a couple times a day. Tidy house, common spaces and doing dishes. Occasionally bicycle for groceries. Sometimes attempting yoga-type stretches for [his] back." Tr. 300. Plaintiff stated that because of his conditions he is unable to do "anything for longer than 20 or 30 minutes" and he has not "had restful sleep since 2013." *Id*. Plaintiff travels by bicycle due to a fear of vehicles; grocery shops for "no more than 30 minutes weekly"; prepares simple meals for himself daily; socializes with his roommates daily; and does not have any problem "getting along with family, friends, neighbors, or others." Tr. 301-04. Plaintiff stated he is able to walk "1/4 mile or less" and pays attention "fairly well," but he does "not always" get along with authority figures, handle stress, or handle changes in routine "well." Tr. 305. Plaintiff noted he uses a cane "when [his] hips go out." *Id.*

On June 14, 2021, Plaintiff completed a second Adult Function Report in which he stated that due to his physical and mental health conditions he has "a hard maximum of no more than

two hours on even the most non-exhausting of tasks before needing a break of at least fifteen minutes." Tr. 1354. In addition, he is only capable of doing that much "one or less days per week." *Id.* Plaintiff noted that he wakes up and has coffee on the porch for "10-20 minutes," during which he has to "alternate between sitting, standing, squatting, and resting on [his] forearms on the railing" because he is "unable to maintain any of those positions comfortably for more than 2-3 minutes." *Id.* Plaintiff explained that his physical therapist would like him to do an exercise and yoga program and "hopes" Plaintiff will use a bicycle trainer "a couple times a week." *Id.* Plaintiff noted it is his "aim to cycle twice per week for at least fifteen minutes but in practice [he is] usually able to achieve an average of three rides per month or less." *Id*. On an average day Plaintiff takes care of paperwork if needed and reads or watches videos although "it can be exceedingly difficult to do any of these things for very long because [his] discomfort levels can rise very quickly if [he is] in the same position for too long." Tr. 1355. Plaintiff notes that "on the majority of days [he is] only able to accomplish part of a large task, a whole medium task, or a few small tasks." *Id.* If his partner does not make dinner, Plaintiff prepares "something that requires little or no extra steps than heating." *Id.* He and his partner will watch videos during and after dinner but he has to "get up and move at least once per hour to avoid getting stiff." *Id*. Plaintiff then does his physical therapy routine if he is feeling up to it. Plaintiff stated he showers only once per week because it "takes a lot of effort to stand and use [his] arms for as long as it takes to clean [himself]" and he often does not have the energy to comb, brush, or maintain his hair. Plaintiff vacuums, wipes down counters, washes dishes, makes the bed, and takes out "lightweight trash," however he is unable to do any of these things for more than ten or fifteen minutes before he needs to take a break. Tr. 1356. Plaintiff's partner "typically drives" or Plaintiff will take dial-a-lift for medical appointments and "public transit then [his] bike for

8 – OPINION & ORDER

errands." Tr. 1357. Plaintiff's hobbies are playing Dungeons and Dragons ("D&D"), making art, and cycling. Plaintiff rides his bicycle "at most 2 times per week" and is "unable to sustain effort on the bike trainer for longer than fifteen minutes." Tr. 1357. Plaintiff can only prepare for one session of D&D per month. "Most others who have the same hobby are able to prep for a session twice per month or even more often than once per week." Tr. 1358. Plaintiff stated he has been unable to garden for six or seven months because he does "not have the capacity to put in the work needed to get [his] plot ready to plant and just getting to the community garden about ½ mile away has become a challenge." *Id*. Plaintiff noted he "can barely lift squat bend stand reach walk sit kneel or climb stairs at all before extreme pain and fatigue set in" and he is "mentally unwell to the point where [he] can't talk or get [his] point across" and he "can't concentrate on anything." *Id.* Plaintiff handles stress and changes in routine "exceedingly poorly." Tr. 1359.

At the July 25, 2023 hearing Plaintiff testified he lives with his partner and they have a "fairly even split" of household chores. Tr. 1019. Plaintiff's partner prepares breakfast and Plaintiff usually prepares dinner by heating up premade frozen meals. Tr. 1019-20. Plaintiff vacuums their apartment "less than once a month" and does "some of the cleaning tasks." Tr. 1021. Plaintiff does his physical therapy exercises twice a day for approximately 30 minutes, but cannot walk for more than a quarter of a mile. Tr. 1022-23. Plaintiff testified that in 2016 or 2017 he would "do something close to like a nine or ten-mile bike ride to do all [his] errands," but he is no longer able to ride for that long. Plaintiff, therefore, uses dial-a-lift for appointments and public transit plus his bicycle for errands. Tr. 1024. Plaintiff stated he cycles "twice a month to once a week" and can go "probably about a mile and a half total." Tr. 1025. In his free time Plaintiff watches YouTube videos, does his stretching, makes a quick breakfast, plays various instruments, prepares for or runs a D&D game, and reads things such as the ten-volume Expanse

series. Tr. 1027. Plaintiff testified, however, that he is unable to sit or stand "for too long, . . . [s]o [he does not] spent a lot of time in one position doing one specific thing." *Id*. Plaintiff stated he has ADHD and has "a very hard time staying on task with things for extended periods of time." Tr. 1032. Plaintiff testified that his "anxiety and other mental health conditions affect [his] ability to interact with others, go to events, [and] . . . leave the house" "big time." Tr. 1034. Plaintiff testified that Enbrel and Humira have taken his pain level from an average of seven out of ten to three out of ten every day. Tr. 1037-38.

The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to produce the symptoms alleged. However, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of [his] symptoms are not fully consistent with the medical evidence and other evidence in the record." Tr. 972. The ALJ noted that on January 15, 2018, Plaintiff reported to NP Samantha Lacanlale to establish care. Plaintiff reported left hip pain but, contrary to his Adult Function reports and testimony in which he indicated that he is only able to bike for 15 minutes, Plaintiff told Lacanlale that "bike[d] from Olympia to Portland regularly." Tr. 643. The ALJ also noted that on April 29, 2020, Plaintiff reported to Leslie Novoa, treating physical therapist, that he "haul[ed] several pallets using his bike to build some plantar boxes. Tr. 1515. On May 26, 2020, Plaintiff reported to Novoa that he was having "4 yds of dirt delivered tomorrow and will be doing a lot of work in the garden." Tr. 1499. Plaintiff reported on June 17, 2021, that he was "about to be doing a lot of work on his garden beds" and reported on July 8, 2021, that he "has been doing a lot of work in his garden beds." Tr. 1629, 1650.

The ALJ also noted that although Plaintiff alleged that he had problems with concentration, various providers observed that Plaintiff had good attention and concentration.

*See, e.g.,* Tr. 545, 881, 1465, 1468, 1475, 1489, 1497, 1519, 1540, 1599, 1533, 1664, 1646, 1649, 1672, 1692, 1717-18, 2054, 2068, 2084, 2087, 2107, 2119, 2127, 2137. In addition, Plaintiff testified that he read the ten-volume Expanse series in the year before his 2023 hearing and he planned and ran a monthly D&D game.

The Court concludes on this record that the record as a whole creates serious doubt as to whether Plaintiff is disabled within the meaning of the Social Security Act. Accordingly, the Court grants Defendant's Motion to Remand and remands this matter for further administrative proceedings including reevaluation of Plaintiff's RFC and the medical source statements.

## CONCLUSION

For these reasons, the Court GRANTS Defendant's Motion to Remand, ECF 13. The Commissioner's decision is REVERSED and REMANDED for administrative proceedings.

IT IS SO ORDERED.

DATED: November 26, 2024

_____
MARCO A. HERNÁNDEZ
United States Senior District Judge

11 – OPINION & ORDER